I'd like to focus my remarks today on the issue of well-founded fear. In an asylum case, an applicant need only show that there is a reasonable fear of persecution. In looking at the reasonableness of the fear in this case, I suggest to the Court that it is to be fit into the Court's Where the issue of reasonableness in analyzing this, it's not limited to just individualized fear, but is a sliding scale, a continuum from individualized all the way to pattern and practice and possibilities of disfavored groups. And that the more evidence there is of a particular group being targeted, then the less there is of a need for a more personalized showing. And in this particular case, what we have here is within a larger group, those were members of the Dachshund party. And within that group is a family that has been active. The main petitioner's husband and father and mother. And during what we see here is the gradual pushing out of this family from Armenia. It seems to me that the husband going back to Armenia is kind of a hard thing to overcome. How do you overcome that proposition? Well, he goes back, even though he's been threatened and beaten, he goes backwards, cast some question on credibility of the situation. Well, the reasons for the husband going back was he had an ill mother and he himself was a doctor and he was going back because out of a concern over his mother's condition. And I would say that this court has held in other cases, for example, in DeMays-Jobes 787-2 at 1332, where in that particular case, it's a Nicaraguan case, the applicant went back to Nicaragua, where he's from, and spent two years unharmed and he went back out of the urgent concern about family members. And the court did not, the court still found that he was able to meet his burden with regard to asylum. And so what we have here is the gradual pushing out of the family, going from starting with the husband's detention and beating, which petitioners witness, subsequently, and also the husband losing his job before that because of his activities. After the husband left, the same individuals who took the husband initially came back and began asking as to his whereabouts. Then there was a receipt of anonymous calls. And then the petitioner in this case, the lead petitioner, was fired from her job, again, because of the family's Kodoshnok connections. In addition, the parents of the petitioners were beaten and detained and imprisoned due to their Kodoshnok activities. In fact, petitioner's fathers died as a result of such beatings. And she and the co-petitioner saw him in the hospital, petitioner's mother, same thing. And she came to the United States at the same time as the petitioner, and she herself was able to get asylum in this country. And then the younger petitioner witnessed what happened to her family. She herself mentioned that she had – she was called derogatory names because of the family's political affiliation. And she herself was followed. And then the proof is in the pudding with regard to the concerns of returning, so that, as was questioned earlier about the husband's return, but after the husband's return, he again had problems, and that he had been detained and arrested by members of the Armenian National Movement, which were the same individuals who, several years before, had detained and harmed his family. So I – As far as the petitioner and her daughter are concerned, what indication is there that they might suffer persecution, except that the husband has suffered it, the mother and father suffered it? There is this one threat in June of 1991, but what else is there from which you could infer that she might fear that she would be hurt if she was sent back? But it's – but the cases don't require it. The Court has held in earlier cases that even of the – even in absence of direct persecution against her personally, if she's – if the person's able to demonstrate a well-founded fear based on acts of violence against friends or family members. I would say that the – that we have – this is, in a certain sense, a little bit similar to Magoyan. The petitioner in Magoyan – you know, the petitioner in Magoyan, there were not direct threats against her afterwards, which her big concern was about what happened to family members. And a lot of her family members were forced to leave. I mean, she did have some problems before, as did – as did the petitioners in this case. Do I want to use all your time up? Okay. I'm going to keep a little bit. Okay. If there's any more questions before I – okay. Good morning. May it please the Court, Jamie Dowd on behalf of John Ashcroft, the respondent. I want to focus on a couple of things that opposing counsel said. He was particularly concerned with the fact that the petitioner's family had experienced problems in Armenia, and therefore the petitioner would experience problems. But he felt – what he failed to address is there has to be a nexus between whatever problems the family experienced and problems that the petitioner may or may not experience. And there's failure here to prove that there was a nexus. She never testified that anyone questioned her about her father or her husband's political activities. She never testified that anyone would impute a political opinion to her or ask her whether or not she held the same political opinion or expressed any belief that she held the same political opinion. So the record doesn't support a finding that there is a nexus between any harm that may have been experienced by her father or her husband and any harm that she may or may not experience. Now, there is a threat made against the family. If you don't get out of the dashnack, if I pronounce that right, party, then somebody in your family is going to be hurt. Isn't that a pretty good nexus? That's the June of 1991 threat? Well, okay. To address your question first, she was never actually threatened. Her husband received – I believe whoever these men were who came and detained him for a day said to him that if he didn't leave, his family could be at risk. But the petitioner herself was never actually threatened. But the husband also lived in Armenia from June of 91 to June of 92 and experienced no problems. The record at 168-169 wasn't threatened, wasn't harmed in any way. So just that one threat alone without – and this Court's precedent under limb, threats could be simply threats of future harm without evidence to show that the family had been otherwise harmed wouldn't qualify. But she was personally threatened at least once, right? I have – that she received telephone calls and visits for men looking for her husband was never actually threatened personally herself in any way. I also want to address, I believe, what opposing counsel said regarding – that there was – she witnessed – because her husband has gone back to Armenia. But the sister was in Armenia the whole time. So the arguments as to that he was concerned about his mother's health and had to go back to help care for her are a little – live in the same town as the mother. In fact Verbalscreaming has just recently testified on the record at two – ...the fact that he is still there, that he returned – ... ... ...him and his family. ... There's a threat out there, regardless of whether you receive it directly, or whether somebody else was the recipient of that threat. ... ... ... Well, it might not, it might affect the analysis whether or not one suffers past persecution. It still could be the basis for a well-founded fear. In my briefs I also argue how this case fits into that. So, unless the court has any other questions, I'll stop there. Thank you both for your arguments. The case is here to be submitted.
judges: Thomas, Paez, Reed